UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                      :
                                                           :
AWAL BANK, BSC,                                            :     Chapter 11
                                                           :     Case No. 10-15518 (ALG)
                                                           :
       Debtor.                                             :
                                                           :
-----------------------------------------------------------x

**OBJECTION OF HSBC BANK USA, NATIONAL ASSOCIATION TO
MOTION OF CHARLES RUSSELL, LLP, LONDON, AS EXTERNAL
ADMINISTRATOR OF AWAL BANK, BSC, FOR ENTRY OF AN
ORDER ESTABLISHING PROTOCOL FOR CHAPTER 11 CASE**

HSBC Bank USA, National Association ("**Bank USA**"), by its counsel, Phillips Lytle LLP, hereby objects (the "**Objection**") to the motion (the "**Motion**") of Charles Russell, LLP, London, as External Administrator (the "**Administrator**") of Awal Bank, BSC (the "**Debtor**") for entry of an order establishing protocol for Chapter 11 case (Docket No. 5), and, in support thereof, respectfully represents as follows:

## INTRODUCTION

By the Motion, the Debtor seeks institution of a protocol that would allow it to invent a hybrid of Chapters 11 and 15 of Bankruptcy Code that does not exist and was neither enacted nor intended to exist by Congress. Allowing a Debtor to cherry-pick powers from Chapter 11, without taking on any of the customary responsibilities and obligations of a Chapter 11 debtor, has no authority under the Bankruptcy Code or caselaw and is contrary to fundamental policies underpinning U.S. bankruptcy law.

1

The proposed protocol would prejudice U.S. creditors of the Debtor such as Bank USA by allowing the Debtor to wield the powers of a Chapter 11 debtor-in-possession under U.S. bankruptcy law without the obligations of transparency, disclosure and due process that customarily protect creditors. The Debtor argues that such protections are unnecessary because of the concurrent Bahrain Proceeding (as defined below). As set forth in more detail herein, however, the Bahrain Proceeding does not appear to provide creditors with protections analogous to those provided under Chapter 11 of the U.S. Bankruptcy Code. In fact, in certain instances, the Debtor seeks to avoid certain customary Chapter 11 disclosure requirements in this case specifically because such disclosure is *not provided* in the Bahrain Proceeding.

For these reasons, and the reasons set forth in more detail below, Bank USA requests that the Motion be denied.

## BACKGROUND

1. Bank USA is a U.S. creditor with claims against the Debtor relating to a Short Term Liquidity Facility Agreement dated as of May 19, 2008 ("**Credit Agreement**"), pursuant to which Bank USA provided the Debtor with an uncommitted overdraft facility of up to $75 million. The overdraft facility was terminated on or about May 28, 2009, and upon termination, the total amount of indebtedness owed by the Debtor to Bank USA under the Credit Agreement totaled approximately $75 million. As a result of the Debtor's failure to repay its obligations under the Credit Agreement after termination as required under the terms of the Credit Agreement, Bank USA provided the Debtor with a notice of default on or about June 26, 2009.

2. On July 17, 2009, Bank USA received an incoming wire transfer sent by JP Morgan Chase Bank and originating from Royal Bank of Scotland in the amount of $12,996,220.98 (the "**Wire Transfer**") to an account of the Debtor at Bank USA. Upon receipt of the wire, Bank USA applied the Wire Transfer to the indebtedness owed by the Debtor under the Credit Agreement. Based on subsequent discussions with the Debtor, Bank USA understands that the Debtor's position is that the Wire Transfer was made in error to the Debtor's account at Bank USA. The Debtor has sought return of the Wire Transfer. Bank USA has refused to return the Wire Transfer on the grounds that its application of the Wire Transfer was in accordance with applicable law.

3. On September 30, 2009, the Administrator filed a petition for recognition of foreign proceeding under Chapter 15 of the U.S. Bankruptcy Code. An order was entered by this Court recognizing the Debtor's insolvency proceeding in Bahrain (the "**Bahrain Proceeding**") as a foreign main proceeding on October 27, 2009.

4. On June 16, 2010, the Debtor filed a motion seeking discovery from Bank USA and certain other HSBC non-U.S. entities that are not subject to the jurisdiction of this Court under Federal Rule of Bankruptcy Procedure 2004. Pursuant to a Stipulated Order, entered by this Court on July 19, 2010, Bank USA produced documents and an officer for deposition with respect to, among other things, the Wire Transfer.

5. On October 21, 2010, the Debtor commenced the present Chapter 11 case. On October 22, 2010, the Debtor filed the Motion which seeks, among other things, to:

3

(i) distribute all Chapter 11 Assets (as defined in the Motion) through the Bahrain Proceeding pursuant to applicable insolvency law of Bahrain;

(ii) proceed with the Chapter 11 case notwithstanding the Debtor's stated intention to file no plan of reorganization or liquidation;

(iii) exempt the Debtor from Bankruptcy Code provisions governing the retention and compensation of professionals;

(iv) exempt the Debtor from the customary appointment of an official committee of unsecured creditors;

(v) allow the Foreign Administrator to require creditors to sign confidentiality agreements before receiving information relating to this Chapter 11 case; and

(vi) exempt the Debtor from filing statements and schedules required under Section 521 of the Bankruptcy Code.

6. At a hearing on October 26, 2010, the Court did not approve the relief requested in the Motion, because, among other reasons, the Court indicated that such relief should only be considered by the Court after additional notice to creditors. (See e.g. 10/26 Hearing Transcript at pp. 28, 36, 38).

7. On November 15, 2010, counsel to the Foreign Administrator transmitted to counsel to Bank USA a letter demanding repayment of the Wire Transfer (the "**Demand Letter**"). The Demand Letter states that the Foreign Administrator seeks such repayment pursuant to, among other things, Section 553(b) of the Bankruptcy Code. Bank USA's application of the Wire Transfer against pre-petition obligations of the Debtor occurred over one year prior to the commencement date of this Chapter 11 case. The Debtor's position is that Section 553(b)'s 90-day "lookback" period should run from

4

the September 30, 2009 commencement date of the Debtor's Chapter 15 case and not the Chapter 11 petition date.

### **OBJECTION**

8. The relief requested in the Motion should be denied. Chapter 15 specifically denies a foreign representative access to U.S. Bankruptcy Code avoidance actions. By the relief request in the Motion, the Debtor seeks to evade the Bankruptcy Code and congressional intent by seeking to proceed with a Chapter 11 case in which the Debtor takes on none of the customary disclosure or fiduciary obligations of a United States Chapter 11 debtor, creating essentially a Chapter 15 case with avoidance powers under U.S. Bankruptcy law, a creation that was specifically rejected by Congress.

9. The prejudice to U.S. creditors that would result from this attempt to frustrate congressional intent is not theoretical, particularly in the context of the Debtor's procedural posture and the entire body of relief it seeks under the Motion.

10. Bank USA is one of the largest U.S. creditors of the Debtor, and the purported avoidance claim that the Debtor seeks to assert against Bank USA appears to be a significant Chapter 11 Asset (as defined in the Motion). Bank USA has an interest in receiving full disclosure of all the Debtor's U.S. assets and the pool of claims that would potentially share in such assets, particularly in light of the fact that the Debtor has stated that it does not seek to file any sort of Chapter 11 plan governing distribution of such assets and instead will distribute such assets in the Bahrain Proceeding pursuant to Bahrain law. Without such disclosure, Bank USA (or any other U.S. Creditor) would not

be able to adequately evaluate the legal or economic implications of the Debtor's attempt to export U.S. assets collected in this Chapter 11 case to Bahrain.

11. Based on the limited information provided by the Debtor in the Motion and supporting declarations, the Bahrain Proceeding does not appear to provide sufficient protections to U.S. creditors. The Debtor does not seek exemption from customary U.S. Bankruptcy Code disclosure requirement because such efforts would be duplicative; instead, it seeks exemption specifically because under Bahrain law, it was not required (or allowed) to disclose such information. While Bahrain law may require basic information describing a debtor's claims and assets be kept confidential (See Motion at para. 22), such purported confidentiality requirements are not an adequate basis for an exemption from disclosing such information in this Chapter 11 case when the "integrity of the [United States] bankruptcy system depends on full and honest disclosure by debtors of all of their assets." See e.g., Rosenshein v. Kleban, 918 F.Supp. 98, 104 S.D.N.Y. 1996.

12. Similarly, the Debtor's argument that an "informal creditors' committee" exists in the Bahrain Proceeding does not provide any assurance that the transparency and oversight that underpins U.S. bankruptcy proceedings are replicated when such an informal committee does not appear to have judicial standing in the Bahrain Proceeding and is even described by the Debtor as merely a "sounding board". (See Motion at para. 18-20).

13.     In light of the fact that the Debtor's scheme is a bald attempt to evade law and congressional intent and runs afoul of fundamental U.S. policies to the detriment of U.S. creditors, it is not surprising that the Debtor is unable to provide any colorable authority under statute or caselaw for the relief it requests.

14.     In the Motion and at the October 26 hearing before this Court, the Debtor argued that the relief requested in the Motion was authorized under Section 1528 of the Bankruptcy Code, which incorporates by reference the "comity" provisions of Section 1525 and 1527 of the Bankruptcy Code. These Sections, however, are not applicable to a *Chapter 11 case* in the manner suggested by the Debtor. Section 103(k) of the Bankruptcy Code provides that "Chapter 15 applies only in a case under such chapter, except that sections 1505, 1513 and 1514 apply in all cases under this title; and section 1509 applies whether or not a case under this title is pending." By the plain language of Section 103(k), sections 1525, 1527 and 1528 are *not* applicable to a Chapter 11 case.

15.     Assuming for the sake of argument that Section 1528 were not limited to application in a Chapter 15 case, the Debtor's interpretation of Section 1528 (that it provides a basis for importing Chapter 15 comity concepts into a Chapter 11 case) is absurdly overbroad, and inconsistent with the plain language of the statute. Section 1528 provides that:

> "After recognition of a foreign main proceeding, a case under another chapter of this title may be commenced only if the debtor has assets in the United States. The effect of such case shall be restricted to the assets of the debtor that are within the territorial jurisdiction of the United States and, to the extent necessary, to implement cooperation and coordination under section 1525, 1526, and 1527,

7

to other assets of the debtor that are within the jurisdiction of the court under sections 541(a) of this title, and 1334(e) of title 28, to the extent that such other assets are not subject to the jurisdiction and control of a foreign proceeding that has been recognized under this chapter"

11 U.S.C. § 1528. Section 1528 clearly only incorporates Section 1525, 1526 and 1527 to determine which assets should be subject to the jurisdiction of the Bankruptcy Court in a case under another chapter. Section 1528 does not provide an avenue to eviscerate swathes of such other Bankruptcy Code chapters. The decision of Judge Peck in In re JSC BTA Bank, 434 B.R. 334 cited by the Debtor in no way expands upon the plain language of Section 1528 as the Debtor suggests, as such decision strictly relates to jurisdictional issues.

16. The Debtor has freely chosen to file for Chapter 11, which it is allowed to do under Section 1528 of the Bankruptcy Code. In making this choice, however, congressional intent, the plain language of the Bankruptcy Code and the equitable interests of U.S. creditors require that the Debtor must accept the entire "bundle of sticks" that accompany the powers and protections of Chapter 11.

8

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Bank USA respectfully requests that this Court (i) deny the Motion and (ii) grant such further relief as is just and proper.

Dated: December 2, 2010

PHILLIPS LYTLE LLP

By /s/ William J. Brown
    William J. Brown, Esq.
    Allan L. Hill, Esq.
437 Madison Avenue, 34th Floor
New York, New York 10022
Telephone No. (212) 759-4888
Attorneys for
HSBC Bank USA, National Association

Doc # 05-397542.3