**BROWN RUDNICK LLP**
David J. Molton, Esq.
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
(212) 209-4800

-and-

Sunni P. Beville, Esq.
Robert L. Harris, Esq.
Rebecca L. Fordon, Esq.
Nicolas M. Dunn, Esq.
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

*Counsel to Charles Russell, LLP, as*
*External Administrator of Awal Bank, BSC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 09-15923 (ALG) |
| AWAL BANK, BSC, | Chapter 15 |
| Debtor in a Foreign Proceeding | |
| In re: | Case No. 10-15518 (ALG) |
| AWAL BANK, BSC, | Chapter 11 |
| Debtor | |

**OBJECTION OF THE EXTERNAL ADMINISTRATOR OF AWAL BANK, BSC,**
**ON BEHALF OF DEBTOR, TO MOTION OF HSBC BANK USA, NATIONAL**
**ASSOCIATION TO DISMISS CHAPTER 11 CASE**

Charles Russell, LLP (the "External Administrator"), as duly authorized foreign representative as defined by 11 U.S.C. § 101(24) and as External Administrator of debtor Awal Bank, BSC ("Awal Bank" or the "Debtor") in a Kingdom of Bahrain administration (the "Foreign Main Proceeding") recognized under 11 U.S.C § 1517(b)(1) as a foreign main proceeding pursuant to the *Order Granting Recognition Of Foreign Main Proceeding And Relief In Aid Thereof*, dated October 27, 2009 (the "Recognition Order") [chapter 15 D.I. 18], by its United States counsel, Brown Rudnick LLP, on behalf of the Debtor, hereby objects (the "Objection") to the Motion of HSBC Bank USA, National Association ("HSBC") to Dismiss Chapter 11 Case (the "Motion to Dismiss") [chapter 11 D.I. 44].

In support of this Objection, the External Administrator states as follows:

## PRELIMINARY STATEMENT

1.     Although relying on Section 1121(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), HSBC has failed to establish any of the requirements necessary for dismissal of the Debtor's chapter 11 case (the "Chapter 11 Case") under that Section, making only the most perfunctory of arguments that "cause" exists for such dismissal.  Instead, HSBC relies upon broad, speculative allegations that the Debtor is somehow attempting to hide its intentions with respect to the Chapter 11 Case.

2.     To the contrary, the External Administrator has been always candid that all or substantially all of the Debtor's United States assets consist of avoidance actions, and that it intends to realize on such assets and seek, with this Court's approval, confirmation of a plan or protocol that would entrust these assets for equitable

distribution to creditors by the External Administrator in the Foreign Main Proceeding pursuant to the Bankruptcy Code (*e.g.*, Sections 1521(b), 1525 to 1529) and in coordination with Awal Bank's case under chapter 15 of the Bankruptcy Code (the "Chapter 15 Case," together with the Chapter 11 Case, the "Cases").[1] *See, e.g., Motion Of Charles Russell, LLP, London, As External Administrator Of Awal Bank, BSC, For Entry Of An Order Establishing Protocol For Chapter 11 Case* (the "Protocol Motion") [chapter 11 D.I. 5] at p. 2 ("The External Administrator's primary goal is to ensure the interests of Awal Bank's creditors are protected through the identification of outstanding claims and development of proposals for satisfying those claims to the extent permitted by realizing upon the assets of Awal Bank, which assets may then be distributed in accordance with the priority and distribution scheme of the CBBFIL."). Consistent with these intentions, on February 24, 2011, the External Administrator initiated an adversary proceeding in order to realize upon its most material United States asset, a claim against HSBC Bank USA, National Association ("HSBC") in the approximate amount of $13 million arising out of the purported setoff by HSBC in the United States (the "Debtor's Setoff Claim"). In the context, it is beyond cavil that HSBC's Motion to Dismiss is not the act of a concerned creditor but rather a litigation tactic intended to prevent Awal Bank from recovering, for the benefit of its worldwide creditors, the $13 million Setoff Amount from HSBC.

---

[1] On February 23, 2011, the External Administrator filed a Supplement (the "Supplement") [chapter 11 D.I. 56] to its Motion to Approve (as defined below) the Debtor's Schedules after the External Administrator became aware of a potential asset in the United States consisting of a limited partnership interest in an investment partnership by the name of EnerTech Capital Partners III, L.P., and a potential liability related thereto. The nature of the potential asset and alleged liability are described in the Supplemented Proposed Amended Schedules, attached as Exhibit B to the Supplement.

3.    None of the three factors that HSBC cites as establishing "cause" for dismissal of the Chapter 11 Case are remotely applicable here. First, HSBC has not established that the Chapter 11 Case is causing a "substantial or continuing loss to or diminution of the estate." See 11 U.S.C. § 1124(a)(4)(A). In fact, exactly the opposite is true – by seeking to recover the Debtor's Setoff Claim, Awal Bank seeks to recover nearly $13 million for the benefit of its creditors worldwide.

4.    Second, HSBC has not established an "unexcused failure" by the Debtor to timely satisfy filing and reporting requirements. 11 U.S.C. § 1124(a)(4)(F). The Debtor has promptly complied with all filing and reporting requirements. The External Administrator filed the Disclosures within the Court's authorized extended deadline pursuant to the territorial restrictions of Section 1528. Then, following constructive discussions with the Office of the United States Trustee (the "United States Trustee"), the External Administrator filed a motion to approve its suggested forms of schedules, statement of financial affairs and operating report pursuant to Section 521(a)(1)(B). Far from an "unexcused failure," the Debtor has conscientiously followed all applicable requirements and indeed has specifically sought approval from this Court for its actions.

5.    Third, HSBC's assertion that the Debtor has "fail[ed] to file a disclosure statement, or to file or confirm a plan" within the time allowed, see 11 U.S.C. ¶ 1124(A)(4)(J), misses the mark. The Debtor has yet to realize on any of its United States assets and the initial exclusive period for the Debtor to file a plan has not expired. Moreover, the External Administrator has made explicit its intention to develop a plan to universally and equitably administer the Awal Bank estate. Accordingly, the External Administrator filed an appropriate motion to extend the exclusive periods during which

only the Debtor may file a chapter 11 plan and solicit acceptances thereof pursuant to Section 1121(d)(1).

6.      HSBC's allegation that the External Administrator has brought the Chapter 11 Case in bad faith is also misplaced. The External Administrator's goal of realizing United States assets through this Chapter 11 Case for equitable distribution in the Foreign Main Proceeding is authorized by chapter 15 and is a logical application of the concept of "modified universality" between a foreign main proceeding and its ancillary cases (as set forth in the Model Law that forms the basis for chapter 15).

7.      Finally, HSBC has not been and will not be prejudiced by the continuation of this Chapter 11 Case. The External Administrator is incurring minimal administrative costs, which are being disclosed to the Court in full compliance with its statutory duties. The only inconvenience of which HSBC may complain is that it is the target of the Debtor's Setoff Claim; however, the risk and inconvenience of a litigation target cannot justify dismissal of the Chapter 11 Case filed to enable recovery of the fruits of that target's avoidable transfer.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.

9.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## BACKGROUND

### A.    The Origin of the Administration of the Foreign Main Proceeding

11.    The Central Bank of Bahrain ("CBB") is the government entity responsible for regulating the financial services industry in Bahrain. See Decree Law No. 64 of 2006, the Central Bank of Bahrain and Financial Institutions Law ("CBBFIL"), art. 4(4). By Resolution No. 38 of 2009, dated July 30, 2009, the Governor of the CBB, acting under the authority of the CBBFIL, placed Awal Bank in administration, thereby commencing the Foreign Main Proceeding in Bahrain. By Resolution No. 44 of 2009, dated August 6, 2009, the Governor of the CBB appointed Charles Russell, LLP to serve as External Administrator of Awal Bank. Consistent with the CBBFIL, the External Administrator has all the powers necessary for the management and running of the business of Awal Bank. See CBBFIL, art. 140(a). Moreover, the CBBFIL empowers the External Administrator to collect all assets of Awal Bank, wherever located. See Part 10 of CBBFIL.

### B.    Claims and Distributions in the Foreign Main Proceeding

12.    A central duty of the External Administrator is to determine either to liquidate Awal Bank's assets or to reorganize Awal Bank and return it to its management and shareholders. See Declaration of Stewart Hey as Representative of Charles Russell, LLP in Support of Chapter 15 Petition and Motion for Provisional Relief [chapter 15 D.I. 5] (the "Hey Chapter 15 Declaration") ¶ 22. To carry out its duty to determine if liquidation is required, the External Administrator is in the process of identifying the Debtor's liabilities and assets. Id. ¶ 23. The External Administrator has delivered to potential creditors a form Notice of Claim for money or contractual rights and solicited

responses thereon. Id. ¶ 24. All creditors of Awal Bank, foreign or domestic, are entitled to file a Notice of Claim with the External Administrator. Id. The External Administrator believes that all creditors seeking recoveries from Awal Bank have already filed Notice of Claim forms against it. See Declaration of Stewart Hey As Representative of Charles Russell, LLP, As External Administrator of Awal Bank, BSC, In Administration, In Support of Chapter 11 Petition And Related Motion For Relief [chapter 11 D.I. 6] (the "Hey Chapter 11 Declaration") ¶ 22.

13.     If liquidation of Awal Bank is ultimately required, the Bahraini High Civil Court will appoint a liquidator to take control of Awal Bank's estate, who will reduce the assets therein to cash and make distributions to creditors worldwide pursuant to the distribution scheme provided in the CBBFIL. Id. ¶¶ 17-19; CBBFIL Part 10, Chapter 3, art. 156(b). The liquidator's determinations with respect to the due amounts on a creditor's claim must be made on a timetable set by the Bahraini High Civil Court, and the liquidator's determinations are subject to review by the court. Id. ¶ 19.

14.     The aim of the CBBFIL is to empower the External Administrator to treat all worldwide creditors of Awal Bank in a fair and comprehensive fashion.

### C.     Information Sharing In The Foreign Main Proceeding

15.     In the Foreign Main Proceeding, the External Administrator has adopted a good and workable protocol for sharing information with creditors. First, subject to the execution of a confidentiality agreement, all creditors that file a proof of claim in the Foreign Main Proceeding are invited to attend quarterly meetings with the External Administrator and the CBB in Bahrain and London whereby creditors receive a presentation providing an update regarding the status of the administration of Awal

Bank's assets and all attendees are given an opportunity to raise issues relating to the administration of Awal Bank's assets. Second, in the Foreign Main Proceeding, an informal creditors' committee ("ICC"), consisting of five of the largest creditors (including Awal Bank's major United States creditor, HSBC),[2] serves as a sounding board through which the External Administrator and the CBB receive creditor feedback regarding various case administration issues. By its participation as a creditor of Awal Bank and in its capacity as a member of the ICC, HSBC (through its affiliate, HSBC Holdings plc) frequently attends update meetings held by the External Administrator, and indeed just recently attended two such meetings on January 14, 2011 (in London), and January 19, 2011 (in Bahrain).

16. In the Foreign Main Proceeding, and as dictated by Bahraini law, confidentiality is a key factor in maintaining the stability and efficiency of the administration of Awal Bank, and protection of confidential information is specifically provided for in Part 8 of the CCBFIL. Thus, although creditors receive information about aggregate global liabilities in the Foreign Main Proceeding, creditor-by-creditor claim information is treated as highly confidential and has not been provided to any creditors in the Foreign Main Proceeding. In light of the ongoing litigation in multiple foreign jurisdictions and the sensitivity of the nature and amount of the various bank claims, the public availability of this information would be detrimental to both the individual creditors and Awal Bank. Indeed, creditors have already filed proofs of claim in the Foreign Main Proceeding with the expectation that such claims would remain

---

[2]     The members of the ICC are Abu Dhabi Islamic Bank, Calyon (a subsidiary of Credit Agricole), Commerzbank/Dresdner, Gulf International Bank and HSBC Holdings plc (an affiliate of HSBC, representing HSBC's interests).

confidential. Notably, out of all of Awal Bank's creditors worldwide, only HSBC has objected to any of the proposed procedures or disclosures in the Chapter 11 Case.

**D.    The Chapter 15 Case**

17.    As part of (and consistent with) the External Administrator's efforts to equitably administer Awal Bank's worldwide assets pursuant to the Foreign Main Proceeding's supervision, the External Administrator filed the *Verified Petition For Recognition Of Foreign Proceeding And Motion For Provisional Relief* (the "Chapter 15 Petition") [chapter 15 D.I. 1] commencing Awal Bank's case under chapter 15 of the Bankruptcy Code on September 30, 2009 (the "Chapter 15 Petition Date") pursuant to Bankruptcy Code Sections 1504 and 1515.

18.    Since the Chapter 15 Petition Date, the External Administrator has been duly and continuously operating and managing the Debtor's affairs in the United States pursuant to the rights and duties bestowed on it as the chapter 15 foreign representative.

19.    In addition to the Cases in the United States, the External Administrator is party to other lawsuits and foreign insolvency proceedings ancillary to the Foreign Main Proceeding (the "Other Ancillary Proceedings"), which are pending in courts in Bahrain, the Cayman Islands, Kuwait, Saudi Arabia, Switzerland, and England.

**E.    The Chapter 11 Case**

20.    In furtherance of its efforts to administer and realize on the assets of Awal Bank, the External Administrator sought to identify potential avoidable transfers that are detrimental to Awal Bank's creditors. In particular, the External Administrator identified a purported setoff by HSBC in the amount of $12,996,220.08 (the "Setoff Amount"), arising on account of an alleged inadvertent transfer on or about Friday, July 17, 2009

(the "Transfer Date") of the same amount by The Royal Bank of Scotland plc ("RBS") to HSBC in the United States. This purported setoff by HSBC gives rise to claims by Awal Bank for return of the Setoff Amount.

21.     As a result, the External Administrator determined it was in the best interests of the worldwide creditors of Awal Bank and the Debtor to commence a chapter 11 case accompanied by a motion establishing a case protocol to pursue such potential avoidance actions.

22.     Thus, on October 21, 2010 (the "Chapter 11 Petition Date"), the External Administrator filed a subsequent petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Petition"), thereby commencing the Chapter 11 Case. Then, on October 22, 2010, the External Administrator filed the Protocol Motion and the Hey Chapter 11 Declaration, seeking to establish a workable protocol to administer the Chapter 11 Case in cooperation and coordination with the Foreign Main Proceeding.

23.     Among other things, the Protocol Motion was intended to facilitate and streamline the pursuit of avoidance actions based on (a) the need to centralize the distribution of Awal Bank assets, (b) the limited scope and amount of the Chapter 11 Case assets, (c) coordination and cooperation with the CBB and the Foreign Main Proceeding, (d) the highly confidential creditor-by-creditor claim information and restrictions imposed on creditors in the Foreign Main Proceeding, and (e) the active involvement of Awal Bank's major United States creditor, HSBC, in the Foreign Main Proceeding, through both its membership on the ICC and its frequent attendance of the quarterly meetings the External Administrator holds in London and Bahrain.

24.     On October 26, 2010, the Court held a hearing to, *inter alia,* consider the Protocol Motion (the "First Day Hearing"). At the First Day Hearing, the Court delayed consideration of certain substantive forms of relief requested in the Protocol Motion until a later date to afford creditors the opportunity to be heard in connection with the requested relief, as well as to determine whether a sufficient number of creditors expressed interest in sitting on an official committee of unsecured creditors to the United States Trustee. The Court noted that many requests for relief, including the request to establish a distribution scheme, were not ripe. As later reported by the United States Trustee, there was not sufficient interest and an official committee was therefore not formed in the Chapter 11 Case.

25.     Subsequent to the First Day Hearing, cognizant of the Court's comments, the External Administrator determined that it would seek relief on an as-needed basis and withdrew the Protocol Motion. On December 6, 2010, the External Administrator filed the *Notice of Withdrawal* of the Protocol Motion [chapter 11 D.I. 24] and the *Notice of Presentment of Order Authorizing Debtor's Motion for Entry of an Order Further Extending the Debtor's Deadline to File Schedules of Assets and Liabilities and Statement of Financial Affairs* [chapter 11 D.I. 25], and then, on December 10, 2010, the External Administrator filed the *Notice of Presentment of Application For Order Authorizing The Retention And Compensation of Brown Rudnick LLP As Counsel For The Debtor* [chapter 11 D.I. 28] and the *Notice of Presentment of Order Authorizing Motion For An Order Establishing Procedures For Interim Compensation And Reimbursement of Expenses For Professionals* [chapter 11 D.I. 30]. On December 21, 2010, the Court entered an *Order* granting the External Administrator's Motion Further

Extending the Debtor's Deadline to File Schedules of Assets and Liabilities and Statement of Financial Affairs [chapter 11 D.I. 32, as amended on December 22, 2010, D.I. 33]. In addition, on December 29, 2010, the Court entered Orders (i) Authorizing the Retention And Compensation of Brown Rudnick LLP As Counsel For The Debtor [chapter 11 D.I. 34], and (ii) Establishing Procedures For Interim Compensation And Reimbursement of Expenses For Professionals [chapter 11 D.I. 35].

F.     **The Setoff Claim Against HSBC**

26.     As noted above, the External Administrator has identified the Debtor's Setoff Claim concerning HSBC. The External Administrator began the process of seeking recovery of the Setoff Amount from HSBC out-of-court by serving a letter on HSBC dated November 13, 2010, constituting a demand for payment (the "Demand Letter") of the Setoff Amount.

27.     HSBC refused to comply with the Demand Letter. Thus, the External Administrator initiated proceedings to recover the Setoff Amount on February 24, 2011, by filing the *Complaint Against HSBC Bank USA, N.A.* (the "Setoff Complaint").

G.     **The Disclosures and Motion to Dismiss**

28.     On November 4, 2010, the External Administrator filed the *Debtor's Motion for Entry of an Order Extending the Debtor's Time to File Schedules of Assets and Statement of Financial Affairs* [chapter 11 D.I. 19] and on November 16, 2010, the Court signed the *Order Extending the Debtor's Deadline to File Schedules of Assets and Liabilities and Statement of Financial Affairs* (the "Extension Order") [chapter 11 D.I. 25].

29.     On January 5, 2011, the External Administrator filed the Debtor's schedules of assets and liabilities (the "Schedules"), statement of financial affairs (the "Statement") and operating reports for October, November and December 2010 (the "Operating Reports," together with the Schedules and Statement, the "Disclosures") [chapter 11 D.I. 36-40].

30.     On January 26, 2011, the United States Trustee held the Section 341 meeting of creditors (the "Section 341 Meeting"). During the Section 341 Meeting, the United States Trustee requested that the Debtor supplement its Schedules or file a motion with the Court seeking a waiver from filing certain information on the Debtor's Schedules. In response to the United States Trustee's request at the Section 341 Meeting, on February 15, 2011, the External Administrator filed the *Motion to Approve Debtor's Schedules, Statement and Form Operating Report* (the "Motion to Approve") [chapter 11 D.I. 48].

31.     On February 2, 2011, HSBC filed the *Motion of HSBC Bank USA, National Association to Dismiss Chapter 11 Case* (the "Motion to Dismiss") [chapter 11 D.I. 44], alleging, among other things, that the Debtor's Disclosures did not meet certain requirements. The External Administrator filed this Objection to the Motion to Dismiss.

**H.     The Exclusivity Periods**

32.     Given the Chapter 11 Petition Date of October 21, 2010, the initial period within which only the Debtor has the right to file a chapter 11 plan under Section 1121(b) (the "Plan Exclusivity Period") was scheduled to expire on February 18, 2011. The period for solicitation of acceptances of any plan filed (the "Solicitation Period" and,

together with the Plan Exclusivity Period, the "Exclusivity Periods") is presently scheduled to expire on April 19, 2011.

33. In light of these deadlines, on February 15, 2011, the External Administrator filed the *Motion of Charles Russell, LLP, as External Administrator of Awal Bank, BSC, on behalf of Debtor, for Entry of a Bridge Order and Further Order Pursuant to Sections 105(a), 1112(d), 1507(a), 1509(b) and 1512 of the Bankruptcy Code Extending the Exclusive Periods During Which Only the Debtor May File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "Exclusivity Motion") [chapter 11 D.I. 46].

34. On February 17, 2011, the Court signed the *Bridge Order Extending the Exclusive Periods During Which Only the Debtor May File a Chapter 11 Plan and Solicit Acceptances thereof* (the "Bridge Order") [chapter 11 D.I. 50]. The Bridge Order extends the Exclusivity Periods until such time as the Court has entered an order determining the relief requested in the Exclusivity Motion.

## I.  Continuing Goals of the Chapter 11 Case

35. The External Administrator recognizes and submits that issues relating to the distribution of United States assets will not become ripe until the External Administrator has realized on such United States assets, *i.e.*, most importantly, if Debtor is successful with respect to the Debtor's Setoff Claim. If and when this contingency occurs, the External Administrator would seek Court approval and confirmation of a plan that would – per Sections 1525, 1526 and 1527 as incorporated within Section 1529 and as applicable to chapter 11 cases filed under to Section 1528 – coordinate, *inter alia*, distribution of any realized United States assets in a manner in accordance with the provisions of chapters 11 and 15 and the Foreign Main Proceeding and that would, upon

approval by this Court, enable any realized United States assets to be administered by the External Administrators in the Foreign Main Proceeding.

**OBJECTION**

36. From the very beginning of these proceedings, the Debtor has complied with the Code, the Court's orders, and the United States Trustee's requests and direction. The External Administrator is exercising the rights and powers granted to the Debtor under the duly authorized Cases for the benefit of all of Awal Bank's worldwide creditors and Awal Bank's estate in pursuit of chapter 15's (and the Model Law's) goal of "modified universality" (*i.e.*, the realization of United States assets and equitable distribution of such assets in the Foreign Main Proceeding). Therefore, not only do the allegations and conjecture of the Motion to Dismiss fail to establish "cause" to dismiss, the continuation of the Chapter 11 Case is and remains in the best interests of the worldwide creditors and estate.

### A.    Law Governing Dismissal Under Section 1112(b)

37. "Under Bankruptcy Code § 1112(b), a court can dismiss a chapter 11 case or convert it to case under chapter 7 'for cause' so long as it is in the best interests of both the creditors and the estate." In re FRGR Managing Member LLC, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).

38. The moving party has the burden of demonstrating cause and bankruptcy judges have wide discretion to determine whether cause exists. See In re FRGR Managing Member LLC, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009) (citations omitted).

39. While Section 1112(b) enumerates several examples of what constitutes "cause" to dismiss a case, a finding of "cause" is not limited to the considerations stated

therein. See In re Tornheim, 181 B.R. 161, 164-65 (Bankr. S.D.N.Y. 1996) ("[t]he factors listed in section 1112(b) are not exhaustive, and the . . . [t]he bankruptcy court can consider other factors that may arise, and use its equitable powers to reach a proper result.") (citations omitted). Therefore, the court may consider the effects and *all the circumstances*, including the Chapter 15 Case and the Foreign Main Proceeding, when deciding if "cause" for dismissal exists. See In re AdBrite Corp., 290 B.R. 209, 216-17 (Bankr. S.D.N.Y. 2003) (The court is "able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.") (quoting H. Rep. 595, 95th Cong., 1st Sess. 406 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6362).

40.     Although courts court may also dismiss a case as a bad faith filing, such a dismissal is warranted only "if *both* objective futility of the reorganization process *and* subjective bad faith in filing the petition are found." In re General Growth Properties, Inc., 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (emphasis added). "It is the totality of circumstances, rather than any single factor, that will determine whether good faith exists. Case law recognizes that a bankruptcy petition should be dismissed for lack of good faith only sparingly and with great caution." In re General Growth Properties, Inc., 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009).

41.     Finally, even the existence of "cause" does not completely resolve a motion to dismiss under to Section 1112(b). See 11 U.S.C. § 1112(b). "Although § 1112(b) states that the court 'shall' . . . dismiss where cause is established, it grants the Court limited discretion to deny the motion . . . if there are '*unusual circumstances* specifically identified by the court that establish that dismissal is not in the best interests of creditors and the estate.'" In re CCT Communications, Inc., 420 B.R. 160, 174

(Bankr. S.D.N.Y. 2009) (quoting 11 U.S.C. 1112(b)(1)) (emphasis added). "The Code does not define unusual circumstances; however, courts have determined that it contemplates conditions that are not common in most chapter 11 cases. Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest of creditors and the estate." In re Van Eck, 425 B.R. 54 (Bankr. D. Conn. 2010) (citation and quotations omitted).

## B. The Chapter 11 Case Should Not Be Dismissed

### i. None of the Enumerated Factors of Section 1112 Establish Cause to Dismiss the Chapter 11 Case

42. None of the enumerated factors of Section 1112(b)(4) are present and thus there is no "cause" to dismiss the Chapter 11 Case. In particular, HSBC misses the mark completely by citing subsections (A), (F) and (J) of Section 1112(b)(4) as bases for its motion.

43. *Subsection (A) Diminution of the Estate and Unlikely Rehabilitation*: In the Chapter 11 Case, there is no substantial or continuing loss to or diminution of the estate and, in light of the ongoing reorganization efforts by the External Administrator in the Foreign Main Proceeding and the Other Ancillary Proceedings, there is at least a reasonable likelihood of rehabilitation of Awal Bank. Further, it is premature for HSBC to make such a statement considering that the exclusivity period to file a plan has not lapsed.

44. *Subsection (F) Unexcused Failure to Comply with Filing or Reporting*: As HSBC is well aware because it was in attendance at the Section 341 Meeting at which the question arose, the United States Trustee requested that the Debtor submit its revise Schedules or obtain approval from the Court by March 2, 2011. In accordance with the

request, the External Administrator filed the Motion to Approve, well in advance of the United States Trustee's March 2 deadline. At this time, HSBC may have issues with the Schedules and Operating Reports, but there certainly was not an "unexcused failure to satisfy timely filing or reporting requirements." See Motion to Dismiss ¶ 8. HSBC will have its opportunity to object to the Debtor's Schedules and Operating Reports at the hearing on the Motion to Approve, but for now, HSBC's objection is premature as a basis for "cause" to dismiss. Further, for the reasons set forth in the Motion to Approve, the disclosure requirements should be modified in this case given the unique circumstances. In particular, the territorial "effects" restriction on the Chapter 11 Case to United States assets pursuant to Section 1528, the Foreign Main Proceeding's protocol relating to the confidentiality of creditor claim information and the duty of the Court to cooperate with the Foreign Main Proceeding pursuant to Sections 1525, 1526 and 1527, made applicable by 1529, demonstrate good cause to modify the disclosure requirements.

45.     *Subsection (J) Failure to File a Disclosure Statement or Plan*: Under this factor, "cause" can be established if the Debtor fails "to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." Since the time fixed by the Bankruptcy Code to file has not lapsed and there is no order of the court, HSBC's objection is premature to be a basis for "cause" to dismiss.

### ii.     The Debtor's Good Faith

46.     It is without question that the External Administrator, in its operation and management of the Debtor, has acted in good faith at every step of the Cases. The objectives behind filing the Chapter 11 Petition remain valid, legitimate and warranted by the Code. See Hon. Leif M. Clark, United States Bankruptcy Court, Western District of

Texas, *Ancillary and Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code*, a Collier Monograph, LexisNexis (2008) ("Judge Clark's Ancillary Case Monograph"), at § 8[1] (noting the "critical power" of the foreign representative to initiate an avoidance action, and that such an action may be seen as being brought for the benefit of the foreign representative). Moreover, the Chapter 11 Case serves the paramount purposes underlying the ancillary Chapter 15 Case of enabling coordination of the Chapter 11 Case with the Foreign Main Proceeding. See id. § 12[1][a] (administration of the full bankruptcy case – a chapter 11 case – initiated under chapter 15 should be coordinated with the foreign main proceeding). Specifically, the External Administrator's intention to realize on United States assets in the Chapter 11 Case and seek, with Court approval, to distribute such assets in the Foreign Main Proceeding is statutorily authorized and a faithful application of the Chapter 15 Case's administrative goal of modified universality. Id. §12[1][a] (noting that "[t]he effects of the full bankruptcy case are limited to the assets of the debtor within the territorial jurisdiction of the United States" and that "[l]imitations on the extraterritorial reach of the U.S. bankruptcy law are in furtherance of *the goal of modified universality*, which favors centralizing, to the extent possible, the primary administration of the debtor's affairs in the main proceeding") (emphasis added). Again, any such distribution will be subject to approval by this Court.

47. HSBC alleges that the Debtor has failed "to oblige to the process" of chapter 11 and has run the case in a "manner that specifically targets and treats HSBC unfairly for coercive purposes." See Motion to Dismiss ¶ 11. These allegations – which, not surprisingly, are made by the target of Debtor's Setoff Claim – are self-serving and

inaccurate. The reality is the Debtor has complied with, or timely requested certain modified relief from, all of its duties in the Chapter 11 Case, and, as unfortunate and inconvenient as it may be to be the "target" of an avoidance action (something which happens all the time under the Code's avoidance regime), it is not unfair or coercive for the Debtor to utilize rights under the Code to recover assets in the United States for the benefit of all of its creditors worldwide. The unfounded statements of HSBC simply do not evidence a lack of good faith.

### iii. The Course of these Cases is Expressly Contemplated and Authorized by the Bankruptcy Code

48.     The Chapter 15 Case originated as an ancillary insolvency proceeding to the Foreign Main Proceeding. The Chapter 11 Case was subsequently filed pursuant to the statutory authority and purpose of Chapter 15 Case (*i.e.*, Sections 1511(a)(2) and 1528). To now ignore the statutory origins, foundation and restricted effect of the Chapter 11 Case would be disingenuous and inequitable. Therefore, the interests of the creditors and estate in the Chapter 11 Case should be assessed in light of the Chapter 15 Case, the Foreign Main Proceeding and the Other Ancillary Proceedings. See Judge Clark's Ancillary Case Monograph, at §12[1][a] (noting that "[t]he effects of the full bankruptcy case are limited to the assets of the debtor within the territorial jurisdiction of the United States" and that "[l]imitations on the extraterritorial reach of the U.S. bankruptcy law are in furtherance of *the goal of modified universality*, which favors centralizing, to the extent possible, the primary administration of the debtor's affairs in the main proceeding") (emphasis added).

49.     As such, it is worth highlighting the purposes of chapter 15. "Chapter 15 is unique among the various chapters in the Bankruptcy Code in that Congress has

actually spelled out the purposes behind the enactment of the Chapter in the statute itself[,]" In re RHTC Liquidating Co., 424 B.R. 714, 723 (Bankr. W.D. Pa. 2010), with the express objectives of:

> "[1] cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; [2] greater legal certainty for trade and investment; [3] fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; [4] the protection and maximization of the debtor's assets; and [5] the facilitation of the rescue of financially troubled businesses."

In re The International Banking Corporation B.S.C., Case No. 09-17318 (SMB), Memorandum Decision and Order Regarding Attached Funds, at 15 (Bankr. S.D.N.Y. Nov. 23, 2010) (citing 11 U.S.C. § 1501 in discussion of motion by foreign administrator of Bahraini bank).

50.    The structure of the Cases "is designed to give the foreign representative the flexibility to initiate a full bankruptcy case as authorized by section 1511 if that appears to be indicated, as well as the ability to then coordinate the U.S. proceeding with the main proceeding for which he or she serves as representative." See Judge Clark's Ancillary Case Monograph § 12[1][a].

51.    It is important to note that, in order for a chapter 11 proceeding to be brought after recognition of a foreign proceeding, the foreign proceeding is required to be a foreign main proceeding. See 11 U.S.C. §§ 1511(a)(2), 1528. This requirement ensures that the foreign main proceeding is the focus and, with Court approval, the preferred and presumed venue for asset distribution, see 11 U.S.C. §§ 1521(a)(5), (b), as is further confirmed by Section 1523, which provides authority for the foreign representative to bring avoidance actions in the chapter 11. As Judge Clark noted:

*"[T]he authority conferred by section 1523 implies that the action is brought for the benefit of the foreign proceeding on whose behalf the representative is acting. That conclusion is further bolstered by subsection (b), which imposes the additional condition that, if the proceeding is a nonmain proceeding, the court must be satisfied that the action in question 'relates to assets that, under United States law, should be administered in the foreign nonmain proceeding.' Certainly, the implication is that the assets so recovered in the action would then be administered in the foreign proceeding."*

<u>See</u> Judge Clark's Ancillary Case Monograph § 8[1] (emphasis supplied).[3]

### iv. Unusual Circumstances Warrant Continuation of the Chapter 11 Case

52.     Even if HSBC could establish "cause" to dismiss (and it cannot), it has failed to establish the absence of "unusual circumstances" weighing against dismissal. <u>See</u> 11 U.S.C. §1112(b). Indeed, the administration of the concurrent United States Cases involving the same debtor in light of the Foreign Main Proceeding and Other Ancillary Proceedings is not only unusual, it may be a first.

53.     The specific unusual circumstances surrounding Awal Bank's administration include (a) the External Administrator's duty to equitably distribute all Awal Bank assets to all Awal Bank creditors worldwide, (b) the active pursuit of the realization of Awal Bank's major United States asset (*i.e.*, the Debtor's Setoff Claim), (c) coordination and cooperation with the CBB direction and the CBBFIL's governance of the Foreign Main Proceeding, (d) the confidentiality protocol of the Foreign Main Proceeding relating to creditor and claim information, (e) the established and functioning informal creditors' committee in the Foreign Main Proceeding and (f) the active

---

[3]     Although recognizing that avoidance actions may also be seen as property of the chapter 11 estate (the implication being that administration and distribution of proceeds would rest in the chapter 11case), Judge Clark went on to note that these two seemingly contradictory principles may be harmonized where "the courts presiding over the respective [chapter 11 and chapter 15] actions … shall seek cooperation and coordination under sections 1525, 1526, and 1527." <u>Id.</u>

involvement of Awal Bank's major United States creditors in the Foreign Main Proceeding.

54. With the chapter 15 objectives in mind, these specific unusual circumstances establish that dismissal is not in the best interests of worldwide creditors and the estate, and the continued prosecution of the Debtor's Setoff Claim against HSBC is in their best interests.

55. HSBC no doubt deliberately ignores the big picture. The External Administrator was charged by the CBB with administering the global Awal Bank estate pursuant to the CBBFIL. Congress, in an effort to facilitate cross-border insolvencies, drafted chapter 15 of the Bankruptcy Code. Explicitly within the chapter 15 statutory framework, Congress granted the foreign representative the power to initiate a chapter 11 case (which is restricted in effect to the Debtor's United States assets) and stressed the importance of comity and deference to, and cooperation with, foreign proceedings. As Judge Clark noted, this case structure gives the External Administrator the flexibility to initiate the Chapter 11 Case, as well as the ability to then coordinate such case with the Foreign Main Proceeding. See Judge Clark's Ancillary Case Monograph § 12[1][a]. The issue that is before the Court is how to practically apply this cooperative framework.

56. To be clear, the External Administrator *is not* asking the Court to ignore chapter 11's provisions. In fact, the Debtor has complied with, or timely and properly requested certain modified relief in respect of, all its chapter 11 duties. The External Administrator, however, is asking the Court to take consideration of the unusual circumstances surrounding Awal Bank's worldwide creditors and estate in exercising discretion and granting relief. See Judge Clark's Ancillary Case Monograph § 12[1][b]

("In all events, the bankruptcy court is to be mindful of its duty to cooperate and coordinate with the foreign proceeding, under section 1525 through 1527.").

### v. Continuation of the Chapter 11 Case is in the Best Interests of the Creditors and the Estate

57.     Finally, the External Administrator is well aware of the requirements that United States creditors remain sufficiently protected upon certain relief granted by the Court in the context of the Chapter 15 Case. See, e.g., 11 U.S.C. §§ 1521(b), 1522.  In remaining true to its own request, the External Administrator submits that Awal Bank's United States creditors, including HSBC, will not be prejudiced upon continuation of the Chapter 11 Case.

58.     In particular, the continuation of the Chapter 11 Case supports the Debtor's Setoff Claim, and, while that claim is pending, the External Administrator will ensure the Debtor continues to adhere to all the Debtor's chapter 11 duties, or request timely and proper relief therefrom.  Furthermore, the dismissal of the Chapter 11 Case could prevent Awal Bank from ever realizing on its major United States asset (the Debtor's Setoff Claim), which would prejudice all other Awal Bank creditors to the sole benefit of HSBC.  Also, the funds used to administer the United States Cases come from the Awal Bank worldwide estate, thus eliminating HSBC's argument that HSBC is suffering localized prejudice in United States estate.

**WHEREFORE**, the External Administrator respectfully requests that the Court (i) deny the Motion to Dismiss the Chapter 11 Case, and (ii) grant the External Administrator such other and further relief as is just and proper.

Dated: February 24, 2011
New York, New York

/s/ David J. Molton
David J. Molton
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

and

Sunni P. Beville
Robert L. Harris
Rebecca L. Fordon
Nicolas M. Dunn
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201

*Attorneys for Charles Russell, LLP, as External Administrator of Awal Bank, BSC*

# 1804780